UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE ALFREDO ACOSTA VILLEGAS, SAMUEL DAVID TOVAR RODRIGUEZ, ULISES MENJIVAR, and MARCO CABRERA,<br><br>               Plaintiffs,<br><br>   v.<br><br>CHEZ JOSEPHINE LTD. and MANUEL UZHCA, Jointly and severally,<br><br>               Defendants. | ECF CASE<br><br>No.: _____<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Jose Alfredo Acosta Villegas, Samuel David Tovar Rodriguez, Ulises Menjivar, and Marco Cabrera (collectively, "Plaintiffs") hereby allege through their attorneys, Lipsky Lowe LLP, as against Defendants Chez Josephine Ltd. ("Chez J") and Manuel Uzhca (collectively, "Defendants") as follows:

NATURE OF THE ACTION

1.      Plaintiffs assert that Defendants willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195(1), (iv) failing to provide an accurate wage statement under N.Y. Lab. Law § 195(3) with every wage payment, (v) failing to pay spread-of-hours pay.

2.      Plaintiffs Villegas, Rodriguez and Menjivar assert that Defendants willfully violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime premium pay.

3.      Plaintiffs Villegas, Rodriguez and Menjivar assert sexual harassment claims under the New York State Human Rights Law ("NYSHRL") and the New York

City Human Rights Law ("NYCHRL").

4.    Plaintiffs Rodriguez and Menjivar assert hostile work environment claims under the NYSHRL and NYCHRL.

5.    Plaintiff Villegas asserts that Defendants willfully violated the Labor Law by retaliating against him for refusing to commit perjury.

6.    Plaintiff Menjivar asserts that Defendants willfully violated the Labor Law by retaliating against him for complaining about Defendant Uzhca assaulting a customer.

7.    Plaintiff Villegas asserts a defamation *per se* claim under the New York common law against Defendant Uzhca.

<u>JURISDICTION AND VENUE</u>

8.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 as they are sufficiently intertwined with the FLSA claim. In addition, the Court has jurisdiction over Plaintiffs' FLSA claim under 29 U.S.C. § 216(b).

9.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

10.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

<u>THE PARTIES</u>

11.    Plaintiff Villegas was, at all relevant times, an adult individual residing in New York, New York.

12.    Plaintiff Rodriguez was, at all relevant times, an adult individual residing in Elizabeth, New Jersey.

13.    Plaintiff Menjivar was, at all relevant times, an adult individual residing in

West New York, New Jersey.

14.     Plaintiff Cabrera was, at all relevant times, an adult individual residing in Bronx, New York.

15.     Upon information and belief, Defendant Chez J is a domestic business corporation that is organized under New York law and is authorized to do business in the State of New York.

16.     Defendant Chez J is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Defendant Chez J is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and materials that have been produced for and moved in commerce, which its employees have handled, include liquor, food, glassware, computers and beverages.

17.     Defendant Uzhca was, at all relevant times, the owner of Defendant Chez J. He, upon information and belief, owns, operates and controls Defendant Chez J's day-to-day operations and management and jointly employed Plaintiffs at all relevant times. He had the authority to hire and fire employees, and set their work schedules and pay.

18.     Each Defendant, either directly or indirectly, has hired Plaintiffs and other employees, fired other employees, controlled Plaintiffs' work schedules and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

19.     At any given time, Defendants have had more than 11 employees.

<u>STATEMENT OF FACTS</u>

20.     Chez J is a Parisian restaurant located in Midtown Manhattan.

<u>Wage and Hour Claims</u>

<u>The Tip Credit, the Minimum Wage and Overtime Background</u>

21.     Employers may claim a "tip credit" against the minimum wage and pay the employees below the minimum wage provided certain conditions are met, including advising the employees they are claiming the tip credit, paying the employees for all hours worked, and the employees do not work more than 20% of a shift doing non-tipped work.

22.     For employers who are located in New York City, who have more than 11 employees, who are paying their employees at the minimum wage and not claiming a tip credit, the minimum overtime rate from May 2019 until December 31, 2023 was 1.5 x $15.00 (the statutory minimum wage during that time) or $22.50, and the minimum overtime rate from January 1, 2024 to December 20, 2024 was 1.5 x $16 (the statutory minimum wage during that time) or $24.00.

23.     From May 2019 to December 31, 2023, the minimum tipped overtime rate was $17.50, which is calculated by multiplying the regular rate of pay of $15.00 ($10.00 + tip credit of $5.00) by 1.5 ($15.00 x 1.5 = $22.50) and then subtracting the tip credit of $5.00 from that amount ($22.50 - $5.00 = $17.50).

24.     From January 1, 2024 to December 20, 2024, the minimum tipped overtime rate was $18.65, which is calculated by multiplying the regular rate of pay of $16.00 ($10.65 + tip credit of $5.35) by 1.5 ($16.00 x 1.5 = $24.00) and then subtracting the tip credit of $5.35 from that amount ($24.00 - $5.35 = $18.65).

Plaintiff Villegas

25.     Defendants employed Plaintiff Villegas as a server from January 2021 to December 20, 2024. [1] [2] Defendants, however, also required Plaintiff Villegas to perform managerial duties.

26.     As a server, Plaintiff Villegas' duties included, *inter alia*, taking orders, bringing drinks to the table, assisting food runners and cleaning tables. Defendants, in addition, required him to spend approximately 3 to 4 hours each day performing non-tipped duties including, *inter alia*, doing inventory and confirming reservations.

27.     From January 2021 to March 31, 2024, Plaintiff Villegas worked for Defendants from 3:00 p.m. to 1:00 a.m. or 2:00 a.m. 5 days per week, and from 10:00 a.m. to 1:00 a.m. or 2:00 a.m. 2 days per week, totaling 80 to 87 hours per week.

28.     From April 1, 2024 to December 20, 2024, Plaintiff Villegas worked for Defendants from 3:00 p.m. to 1:00 a.m. or 2:00 a.m. 5 days per week, and from 10:00 a.m. to 1:00 a.m. or 2:00 a.m. 2 days per week, totaling 80 to 87 hours per week. However, every other week he took one day off, totaling 65 to 76 hours per week.

29.     Plaintiff Villegas regularly received tips from customers.

30.     From January 2021 to December 31, 2023, Defendants paid Plaintiff Villegas $10.00 per hour for the hours he worked up to 40 per week, which is below the Labor Law's statutory minimum wage.

31.     From January 1, 2024 to December 20, 2024, Defendants paid Plaintiff Villegas $10.00 per hour for the hours he worked up to 40 per week, which is below the

---

[1] The date ranges are estimates based on Plaintiffs' memories.
[2] Plaintiff Villegas also worked for Defendants in 2011 for one year under the previous management.

Labor Law's minimum wage and tipped minimum wage rate.

32.     When Plaintiff Villegas worked more than 40 hours per week, Defendants paid him $10 per hour for only 20 to 25 of the overtime hours he worked even though he typically worked 25 to 47 hours of overtime per week.

33.     Defendants paid Plaintiff Villegas below the minimum wage because, upon information and belief, he was a tipped employee and they took a tip credit.

34.     Defendants never informed Plaintiff Villegas that they were taking a tip credit.

35.     Defendants did not meet the necessary conditions to claim a tip credit against Plaintiff Villegas' hourly rate because his non-tipped duties exceeded 20% or 2 hours, whichever is less, of each work day; beginning in January 2024, they paid him below the minimum tipped rate; throughout his employment, they paid him below the minimum tipped overtime rate; they never informed him that they were taking a tip credit; and they did not pay him for all hours worked.

36.     Plaintiff Villegas regularly complained to Defendant Uzhca about Defendants' failure to pay him at the correct overtime rate. Defendant Uzhca always responded that he would "take care of" Plaintiff Villegas. He, however, continued to pay him incorrectly.

37.     Defendants did not pay Plaintiff Villegas spread-of-hours pay: an extra hour of pay at the minimum wage when he worked more than 10 hours.

38.     Defendants did not provide Plaintiff Villegas with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195(1).

39.     Defendants did not provide Plaintiff Villegas with an accurate wage statement under N.Y. Lab. Law § 195(3) with every wage payment because the wage statements did not contain the correct hours he worked.

40.     Defendants' failure to provide Plaintiff Villegas with the N.Y. Lab Law § 195(1) notice and accurate wage statements deprived him of the information necessary for review of his wage and hours worked and was a direct cause for his economic injury and, in fact, resulted in his wages being underpaid.

41.     If Defendants had complied with N.Y. Lab. Law §§ 195(1) and 195(3) notices and wage statements, Plaintiff Villegas would have been able to see that he was not being lawfully paid and would have been able to avoid underpayment of his wages.

<u>Plaintiff Rodriguez</u>

42.     Defendants employed Plaintiff Rodriguez as a busser from July 2022 to 2023, and as a bartender from 2023 until he was unlawfully terminated on December 21, 2024.

43.     As a busser, Plaintiff Rodriguez's duties included, *inter alia*, organizing and cleaning tables. Defendants also sometimes required him to perform food runner duties.  Defendants, in addition, required him to spend approximately 3 hours each work day performing non-tipped duties including, *inter alia*, cleaning the bar, serving food, looking for ice, and taking out the garbage.

44.     As a bartender, Plaintiff Rodriguez's duties included, *inter alia*, making drinks. Defendants, in addition, required him to spend approximately 3 hours each work day performing non-tipped duties including, *inter alia*, cleaning the bar, serving food, looking for ice, and taking out the garbage.

-7-

45.    From July 2022 to approximately August 2024, Plaintiff Rodriguez worked for Defendants from 3:00 p.m. to 12:00 a.m. or 3:00 a.m. 5 to 6 days per week, totaling 45 to 60 hours per week. Plaintiff Rodriguez, in addition, typically worked one additional shift on the weekend one day per month, from 10:00 a.m. to 3:00 p.m., totaling 50 to 65 hours on those weeks.

46.    From August 2024 until December 21, 2024, Plaintiff Rodriguez worked for Defendants from 3:00 p.m. to 12:00 a.m. or 3:00 a.m. 4 days per week, totaling 36 to 48 hours per week.

47.    Plaintiff Rodriguez regularly received tips from customers.

48.    From July 2022 to December 31, 2023, Defendants paid Plaintiff Rodriguez $10.00 per hour for all hours he worked up to 40 hours per week, which is below the Labor Law's statutory minimum wage.

49.    From January 1, 2024 to December 21, 2024, Defendants paid Plaintiff Rodriguez $10.00 per hour for the hours he worked up to 40 per week, which is below the Labor Law's minimum wage and tipped minimum wage rate.

50.    When Plaintiff Rodriguez worked more than 40 hours per week, Defendants paid him a fixed amount of $100 via personal check for the hours he worked in excess of 40 per week, regardless of how many hours he worked, which was substantially less than the amount Defendants owed him for the hours he worked in excess of 40 per week.

51.    From July 2022 to August 2024, Plaintiff Rodriguez's regular overtime rate was as low as $4.00 per hour ($100/(65 hours – 40 hours)) during certain weeks.

52.    From August 2024 to December 21, 2024, Plaintiff Rodriguez's regular

overtime rate was as low as $12.50 ($100/(48 hours - 40 hours)) during some weeks.

53.    Defendants paid Plaintiff Rodriguez below the minimum wage because, upon information and belief, he was a tipped employee and they took a tip credit.

54.    Defendants never informed Plaintiff Rodriguez that they were taking a tip credit.

55.    Defendants did not meet the necessary conditions to claim a tip credit against Plaintiff Rodriguez's hourly rate because his non-tipped duties exceeded 20% or 2 hours, whichever is less, of each work day; beginning in January 2024, they paid him below the minimum tipped rate; throughout his employment, they paid him below the minimum tipped overtime rate; they never informed him that they were taking a tip credit; and they did not pay him for all hours worked.

56.    Plaintiff Rodriguez regularly complained to Christopher Uzhca (Manager), Defendant Uzhca and Daniella (last name unknown) (Administrative Officer) about Defendants' failure to pay him at the correct overtime rate and for all overtime hours. They did not say anything in response nor did they promise to pay him at the correct overtime rate and for all overtime hours worked.

57.    Defendants did not pay Plaintiff Rodriguez spread-of-hours pay: an extra hour of pay at the minimum wage when he worked more than 10 hours.

58.    Defendants did not provide Plaintiff Rodriguez with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195(1).

59.    Defendants did not provide Plaintiff Rodriguez with an accurate wage statement under N.Y. Lab. Law § 195(3) with every wage payment because the wage statements did not contain the correct hours he worked.

60.     Defendants' failure to provide Plaintiff Rodriguez with the N.Y. Lab Law § 195(1) notice and accurate wage statements deprived him of the information necessary for review of his wage and hours worked and was a direct cause for his economic injury and, in fact, resulted in his wages being underpaid.

61.     If Defendants had complied with N.Y. Lab. Law §§ 195(1) and 195(3) notices and wage statements, Plaintiff Rodriguez would have been able to see that he was not being lawfully paid and would have been able to avoid underpayment of his wages.

<u>Plaintiff Menjivar</u>

62.     Defendants employed Plaintiff Menjivar as a bartender from 2015 to 2020 and from early 2022 until it unlawfully terminated him on December 20, 2024.

63.     As a bartender, Plaintiff Menjivar's duties included, *inter alia*, making drinks, serving customers and managing the register. Defendants, in addition, required him to spend approximately 1.5 to 2 hours each work day performing non-tipped duties including, *inter alia*, cleaning the floor, sweeping the floor, deep cleaning the bar and taking out the garbage.

64.     From 2016 to 2019,[3] Plaintiff Menjivar worked for Defendants from 3:00 p.m. to 2:00 a.m. 5 days per week totaling 55 hours per week.

65.     From 2019 to early 2020, Plaintiff Menjivar worked for Defendants on 8 to 10 occasions: from 3:00 p.m. to 12:00 a.m. or 3:00 a.m. on 3 of those days, and for 4 to 5 hours per day on 5 to 7 of those days.

66.     From 2022 to approximately February 2023, Plaintiff Menjivar worked for Defendants from 3:00 p.m. to 2:00 a.m., 4 to 5 days per week, totaling 44 to 55 hours per

---

[3] Plaintiff Menjivar is not seeking damages for the time period prior to February 2019 as that period of time is beyond the statute of limitations for his Labor Law claims.

week.

67.     From March 2023 to December 20, 2024, Plaintiff Menjivar worked for Defendants from 10:00 a.m. to 2:00 a.m. or 3:00 a.m. 3 days per week, totaling 48 to 51 hours per week.

68.     Plaintiff Menjivar regularly received tips from customers.

69.     From 2016 to 2020, Defendants paid Plaintiff Menjivar $5.00 per hour for the hours he worked up to 40 hours per week, which was below the Labor Law's statutory minimum wage and the minimum tipped rate.

70.     From 2016 to 2020, Defendants paid Plaintiff Menjivar $10.00 per hour for the hours he worked in excess of 40 each week.

71.     From 2022 to December 20, 2024, Defendants paid Plaintiff Menjivar $10.65 per hour, for all hours he worked, including the hours he worked above 40 per week.

72.     Defendants paid Plaintiff Menjivar below the minimum wage because, upon information and belief, he was a tipped employee and they took a tip credit.

73.     Defendants never informed Plaintiff Menjivar that they were taking a tip credit.

74.     Defendants did not meet the necessary conditions to claim a tip credit against Plaintiff Menjivar's hourly rate because his non-tipped duties exceeded 20% or 2 hours, whichever is less, of each work day; they paid him below the minimum tipped rate; they paid him below the minimum tipped overtime rate; and they never told him they were taking a tip credit.

75.     Defendants did not pay Plaintiff Menjivar spread-of-hours pay: an extra

hour of pay at the minimum wage when he worked more than 10 hours.

76.    Defendants did not provide Plaintiff Menjivar with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195(1).

77.    Defendants did not provide Plaintiff Menjivar with an accurate wage statement under N.Y. Lab. Law § 195(3) with every wage payment because the wage statements did not contain the correct hours he worked.

78.    Defendants' failure to provide Plaintiff Menjivar with the N.Y. Lab Law § 195(1) notice and accurate wage statements deprived him of the information necessary for review of his wage and hours worked and was a direct cause for his economic injury and, in fact, resulted in his wages being underpaid.

79.    If Defendants had complied with N.Y. Lab. Law §§ 195(1) and 195(3) notices and wage statements, Plaintiff Menjivar would have been able to see that he was not being lawfully paid and would have been able to avoid underpayment of his wages.

Plaintiff Cabrera

80.    Defendants employed Plaintiff Cabrera as a busboy from 2003 to March 2020.

81.    As a busboy, Plaintiff Cabrera's duties included, *inter alia*, taking out silverware, cleaning silverware and preparing food. Defendants, in addition, required him to spend approximately 1 to 1.5 hours each work day performing non-tipped duties including, *inter alia*, cleaning the windows, sweeping, mopping, refilling the cooler with ice and cleaning the coffee pot.

82.     From May 2019 to March 2020,[4] Plaintiff Cabrera worked for Defendants from 3:00 p.m. or 4:00 p.m. until 11:00 p.m. to 2:00 a.m. 3 days per week, and from 3:00 p.m. until 8:00 p.m. to 10:00 p.m. 2 days per week, totaling 34 to 47 hours per week.

83.     Plaintiff Cabrera regularly received tips from customers.

84.     From May 2019 to March 2020, Defendants paid Plaintiff Cabrera $9.75 per hour for all hours worked, including those above 40 per week, which was below the Labor Law's statutory minimum wage, minimum tipped rate, minimum overtime wage and minimum tipped overtime rate.

85.     Defendants paid Plaintiff Cabrera below the minimum wage because, upon information and belief, he was a tipped employee and they took a tip credit.

86.     Defendants never informed Plaintiff Cabrera that they were taking a tip credit: they did not inform him of this verbally or on any wage statement or notice.

87.     Defendants required Plaintiff Cabrera to participate in a tip pool with other busboys and employees, including with a manager named Danielle.

88.     Defendants did not meet the necessary conditions to claim a tip credit against Plaintiff Cabrera's hourly rate because on some days his non-tipped duties exceeded 20% or 2 hours, whichever is less, of each work day; they required him to participate in a tip pool with a manager; they paid him below the minimum tipped rate; they paid him below the minimum tipped overtime rate; and they never told him they were taking a tip credit.

89.     Defendants did not pay Plaintiff Cabrera spread-of-hours pay: an extra hour of pay at the minimum wage when he worked more than 10 hours.

---

[4] Plaintiff Cabrera is not seeking damages for the time period prior to May 2019 as that period of time is beyond the statute of limitations for his Labor Law claims.

90.     Defendants did not provide Plaintiff Cabrera with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195(1).

91.     Defendants did not provide Plaintiff Cabrera with an accurate wage statement under N.Y. Lab. Law § 195(3) with every wage payment because the wage statements did not contain the correct hours he worked.

92.     Defendants' failure to provide Plaintiff Cabrera with the N.Y. Lab Law § 195(1) notice and accurate wage statements deprived him of the information necessary for review of his wage and hours worked and was a direct cause for his economic injury and, in fact, resulted in his wages being underpaid.

93.     If Defendants had complied with N.Y. Lab. Law §§ 195(1) and 195(3) notices and wage statements, Plaintiff Cabrera would have been able to see that he was not being lawfully paid and would have been able to avoid underpayment of his wages.

Sexual Harassment and Hostile Work Environment

94.     Defendants show no regard for any employment laws, including how they pay their employees, speak to their employees and treat their employees.

95.     Defendants' work environment is rampant with unlawful harassment and discrimination, which goes unchecked and where the victims are retaliated against when they reject sexual advances and discrimination by their supervisors.

96.     Throughout their employment with Defendants, Defendant Uzhca discriminated against and/or sexually harassed Plaintiffs on numerous occasions.

Plaintiff Villegas

97.      Throughout his employment with Defendants, Defendant Uzhca regularly commented on Plaintiff Villegas' body by, for example, stating that he must have gotten surgery for his body to "look like this" – implying that he liked the way Plaintiff Villegas' body looked.

98.      Throughout his employment with Defendants, Defendant Uzhca regularly attempted to physically touch Plaintiff Villegas. Plaintiff Villegas, in response, ignored him, moved away or directed him to stop acting this way – rejecting his advances. However, Defendant Uzhca continued to harass him.

Plaintiff Rodriguez

99.      Plaintiff Rodriguez is a gay male.

100.      Throughout his employment with Defendants, Defendant Uzhca regularly told Plaintiff Rodriguez that he is "stupid for being gay" and regularly referred to him as a "pajara" – a Spanish word that literally means "birdhouse" but which is considered a derogatory term towards individuals who are gay.

101.      On November 22, 2023 and in December 2023, Defendant Uzhca grabbed Plaintiff Rodriguez's butt.

Plaintiff Menjivar

102.      Plaintiff Menjivar is a gay male.

103.      Throughout his employment with Defendants, Defendant Uzhca regularly told Plaintiff Menjivar and other employees "all gays should go to hell" and "all gays should die."

104.     Throughout his employment with Defendants, Defendant Uzhca regularly told Plaintiff Menjivar "don't be scared, I am just passing through" while passing him by – referring to the fact that he was very close to Plaintiff Menjivar's body and buttocks to the point that it appeared he was going to touch it.

<u>Labor Law § 740 Retaliation Against Plaintiffs Villegas and Menjivar</u>

<u>Plaintiff Villegas</u>

105.     In March 2022, one of Defendants' employees or former employees filed a sexual harassment lawsuit against them (the "Sexual Harassment Lawsuit").

106.     After Defendants were served with the complaint in the Sexual Harassment Lawsuit, Defendant Uzhca repeatedly directed Plaintiff Villegas to lie if he was ever asked about the sexual harassment that took place at Defendants.

107.     On November 1, 2024, Plaintiff Villegas was subpoenaed to testify in the Sexual Harassment Lawsuit on December 20.

108.     From November 1, 2024 to December 20, 2024, Defendant Uzhca directed Plaintiff Villegas at least once per week to lie during the deposition by indicating that Defendants did not and do not sexually harass employees. Plaintiff Villegas always responded that he would not lie because it is against the law and it would make him an accomplice in Defendants' sexual harassment of employees.

109.     Plaintiff Villegas did not end up testifying in the Sexual Harassment Lawsuit. However, on December 20, 2024 – the day on which he was supposed to testify – Defendant Uzhca believed that Plaintiff Villegas had testified so he asked Plaintiff Villegas whether he lied during the deposition. Plaintiff Villegas pretended he had testified and responded that he told the truth during it.

110. The very next day, on December 21, 2024, Defendant Uzhca terminated Plaintiff Villegas and stated that "I don't need you anymore." This was a thinly veiled attempt to cover up the retaliatory animus underlying his termination.

111. Defendants terminated Plaintiff Villegas for refusing to engage in perjury.

Plaintiff Menjivar

112. On December 20, 2024, Nikki (last name unknown) (one of Defendants' customers and former employee) was at Defendants' bar and informed Plaintiff Menjivar that her mother had recently passed away. Defendant Uzhca, thereafter, approached her and told her "[your mother] may have passed, but you are still pretty hot." Nikki then told Plaintiff Menjivar that Defendant Uzhca tried to put his hand between her legs, at which point Plaintiff Menjivar directed Defendant Uzhca to stop and told him that his behavior was illegal. Defendant Uzhca responded by stating "if you are not happy with what I do, then just leave" and then terminated Plaintiff Menjivar.

113. Defendants terminated Plaintiff Menjivar for complaining about Defendant Uzhca assaulting a customer.

Defamation *Per Se*

114. Beginning in as late as March 2025, Defendant Uzhca has been defaming Plaintiff Villegas.

115. Beginning in March 2025, a number of Defendants' customers, including but not limited to a Director of Broadway shows, as well as the Manager of Bocca di Bacco – a restaurant close in proximity to Chez Josephine –  informed Plaintiff Villegas that Defendant Uzhca and his daughter told them that Defendants terminated Plaintiff Villegas for stealing from the restaurant.

116.    Defendants knew these statements were false because Plaintiff Villegas never stole from the restaurant and further, as set forth above, Defendants terminated him for refusing to engage in perjury.

117.    Defendants' false statements have injured Plaintiff Villegas' reputation and he has suffered economic loss. For example, on March 17, 2025, in an effort to find employment following his unlawful termination from Defendants, Plaintiff Villegas went on an interview at Bocca di Bacco, after which Bocca di Bacco contacted Chez Josephine to find out about his employment there. Bocca di Bacco, thereafter, did not hire Plaintiff Villegas to work at its restaurant. Both the Director and General Manager of Bocca di Bacco, thereafter, told Plaintiff Villegas that Defendant Uzhca said that Plaintiff Villegas was terminated for stealing from Chez Josephine – demonstrating that Bocca di Bacco did not hire Plaintiff Villegas because of Defendant Uzhca's false statements.

FIRST CAUSE OF ACTION
FAILURE TO PAY THE MINIMUM WAGE
UNDER THE NEW YORK LABOR LAW
(On Behalf of all Plaintiffs)

118.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

119.    Defendants are "employers" under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiffs.

120.    Defendants constitute one integrated enterprise under the Labor Law.

121.    As an employer within the meaning of the Labor Law, Defendant Uzhca is personally liable for any Labor Law violations.

122.    At all relevant times, Defendants were subject to the Minimum Wage Order for the Hospitality Industry promulgated by the New York State Department of

Labor, 12 N.Y.C.R.R. Part 146.

123.    The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs.

124.    Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiffs the statutory minimum wage.

125.    Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §§ 137-2.3, *et seq.*

126.    Defendants paid Plaintiffs below the statutory minimum wage.

127.    Defendants were not eligible to take a tip credit and pay Plaintiffs below the statutory minimum wage under 12 N.Y.C.R.R. §§ 137-2.1, 2.2 and 12 N.Y.C.R.R. §§ 146-2.2, 2.9 because: (i) Plaintiffs spent 2 hours or more than 20%, whichever is less, of each work day performing non-tipped duties, (ii) Defendants failed to pay them the minimum tipped overtime rate, (iii) Defendants failed to pay Plaintiffs at the minimum tipped rate, (iv) Defendants failed to pay Plaintiffs for all hours worked, and (v) Defendants did not notify Plaintiffs that they were taking a tip credit. Defendants also required Plaintiff Cabrera to participate in a tip pool with a manager.

128.    Defendants are accordingly liable to Plaintiffs for the difference between the hourly rate at which they paid them and the statutory minimum wage.

129.    Defendants willfully violated the Labor Law by knowingly and

intentionally failing to pay Plaintiffs the minimum wage.

130. Due to Defendants' Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

SECOND CAUSE OF ACTION
FAILURE TO PAY THE OVERTIME PREMIUM PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of all Plaintiffs)

131. Plaintiffs reallege every preceding allegation as if set forth fully herein.

132. Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendants were required to pay Plaintiffs 1.5 times their regular rate of pay for all hours they worked in excess of 40.

133. Defendants were not permitted to take a tip credit against Plaintiffs' wages and, accordingly, failed to pay them at the minimum overtime rate, violating the Labor Law. N.Y. Lab. Law § 650.

134. Even if Defendants were permitted to take a tip credit against Plaintiffs' wages – which they were not – Defendants failed to pay Plaintiffs at the correct tipped overtime rate, violating the Labor Law. N.Y. Lab. Law § 650.

135. Defendants willfully violated Plaintiffs' rights by failing to pay them overtime compensation at rates not less than 1.5 times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, violating the New York Labor Law and its regulations.

136. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled, violating the Labor Law.

137. Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay the Plaintiffs overtime wages.

138. Pursuant to the Labor Law, Plaintiffs are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
### FAILURE TO PAY THE OVERTIME PREMIUM PAY UNDER THE FLSA
(On Behalf of Plaintiffs Villegas, Rodriguez and Menjivar)

139. Plaintiffs reallege every preceding allegation as if set forth fully herein.

140. Defendants are employers under the FLSA and employed Plaintiffs Villegas, Rodriguez and Menjivar within the meaning of the FLSA.

141. Defendants were required to pay Plaintiffs Villegas, Rodriguez and Menjivar no less than 1.5 times the regular rate at which they were paid for all hours worked in excess of 40 hours per week under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a).

142. Defendants willfully violated Plaintiffs Villegas, Rodriguez and Menjivar's rights by failing to pay them overtime compensation at rates not less than 1.5 times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, violating the FLSA.

143. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their employees for the hours they worked in excess of 40 per week.

144.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies under 29 U.S.C. § 255.

145.    Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs Villegas, Rodriguez and Menjivar's compensation.

146.    Pursuant to the FLSA, Plaintiffs Villegas, Rodriguez and Menjivar are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

FOURTH CAUSE OF ACTION
FAILURE TO PAY SPREAD-OF-HOURS PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of all Plaintiffs)

147.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

148.    Defendants willfully failed to pay Plaintiffs one additional hour at the minimum wage rate for each day they worked ten or more hours, violating 12 N.Y.C.R.R. § 146.-1.6.

149.    Due to Defendants' Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

FIFTH CAUSE OF ACTION
FAILURE TO PROVIDE 195(1) NOTICE
UNDER THE NEW YORK LABOR LAW
(On Behalf of all Plaintiffs)

150.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

151.    Defendants willfully failed to supply Plaintiffs with the required Notice

and Acknowledgement of Pay Rate and Payday under N.Y. Lab. Law § 195(1)(a) within

10 business days of his first employment date.

152.    Due to Defendants' violations of N.Y. Lab. Law § 195(1), Plaintiffs are

entitled to recover from Defendants $50.00 for each workday that the violations occurred

or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive

and declaratory relief. N.Y. Lab. Law § 198(1)-b (2016).

SIXTH CAUSE OF ACTION<br>
FAILURE TO PROVIDE 195(3) WAGE STATEMENT<br>
UNDER THE NEW YORK LABOR LAW<br>
(On Behalf of all Plaintiffs)

153.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

154.    Defendants willfully failed to supply Plaintiffs with the required accurate

wage statements with every payment of wages, violating Labor Law § 195(3).

155.    Due to Defendants' violations of Labor Law § 195(3), Plaintiffs are

entitled to recover from Defendants $100.00 for each work week that the violations

occurred or continue to occur, or a total of $5,000.00, as provided for by Labor Law §

198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

SEVENTH CAUSE OF ACTION<br>
SEXUAL HARASSMENT UNDER THE NYSHRL<br>
(On Behalf of Plaintiffs Villegas, Rodriguez and Menjivar)

156.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

157.    At all relevant times, Plaintiffs Villegas, Rodriguez and Menjivar were

"employees" and "persons" within the meaning of the NYSHRL and Defendants were

"employers."

158.    The NYSHRL prohibits employment discrimination and harassment based

on gender. N.Y. Exec. Law § 296(1)(a).

159.    Plaintiffs Villegas, Rodriguez and Menjivar were subjected to unwelcomed sexual conduct in the workplace that constitutes sex-based harassment.

160.    Chez J is vicariously liable for an actionable hostile and discriminatory environment created by its supervisors who had immediate or successively higher authority over Plaintiffs Villegas, Rodriguez and Menjivar.

161.    Defendant Uzhca had the authority to affect Plaintiffs Villegas, Rodriguez and Menjivar's employment terms and conditions.

162.    Defendant Uzhca is personally liable for the damages under this claim because he constitutes an employer and participated in the conduct giving rise to this claim. N.Y. Exec. Law §§ 296(1), 296(6).

163.    As a result of Defendants' harassment of them, Plaintiffs Villegas, Rodriguez and Menjivar have suffered and continue to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

164.    Defendants harassed Plaintiffs Villegas, Rodriguez and Menjivar with malice and/or reckless indifference to their rights under the NYSHRL.

165.    As a result of Defendants' unlawful conduct, Plaintiffs Villegas, Rodriguez and Menjivar can recover punitive damages against Defendants.

<u>EIGHTH CAUSE OF ACTION</u>
GENDER BASED HARASSMENT UNDER THE NYCHRL
(On Behalf of Villegas, Rodriguez and Menjivar)

166.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

167.    At all relevant times, Plaintiffs Villegas, Rodriguez and Menjivar were "employees" and "persons" within the meaning of the NYCHRL and Defendants were "employers."

168.    Plaintiffs Villegas, Rodriguez and Menjivar were treated less well than their female colleagues because of their gender, violating N.Y.C. Admin. Code § 8-107(1)(a).

169.    Chez J is strictly liable for the actionable hostile environment created by its supervisors who had immediate or successively higher authority over Plaintiffs Villegas, Rodriguez and Menjivar.

170.    Defendant Uzhca had the authority to affect Plaintiffs Villegas, Rodriguez and Menjivar's employment terms and conditions.

171.    Defendant Uzhca is personally liable for the damages under this claim because he constitutes an employer and participated in the conduct giving rise to this claim.

172.    As a result of Defendants' harassment of them, Plaintiffs Villegas, Rodriguez and Menjivar have suffered and continue to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

173.    Defendants harassed Plaintiffs Villegas, Rodriguez and Menjivar with malice and/or reckless indifference to their rights under the NYCHRL.

174.    As a result of Defendants' unlawful conduct, Plaintiffs Villegas, Rodriguez and Menjivar can recover punitive damages against Defendants. N.Y.C. Admin. Code § 8-502.

## NINTH CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT UNDER THE NYSHRL
(On Behalf of Plaintiffs Rodriguez and Menjivar)

175.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

176.    Defendants' discrimination of Plaintiffs Rodriguez and Menjivar constitutes a hostile work environment under the NYSHRL.

177.    Defendants have violated the NYSHRL by subjecting Plaintiffs Rodriguez and Menjivar to a hostile work environment by discriminating against them in the terms, conditions and privileges of their employment because of their sexual orientation.

178.    As a result of Defendants subjecting them to a hostile work environment, Plaintiffs Rodriguez and Menjivar have suffered and continue to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

## TENTH CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT UNDER THE NYCHRL
(On Behalf of Plaintiffs Rodriguez and Menjivar)

179.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

180.    Plaintiffs Rodriguez and Menjivar have been treated less well than their non-gay colleagues because of their sexual orientation, violating N.Y.C. Admin, Code § 8-107(1)(a).

181.    Defendants' harassment of Plaintiffs Rodriguez and Menjivar constitutes a hostile work environment under the NYCHRL.

182.    Defendants have violated the NYCHRL by subjecting Plaintiffs Rodriguez and Menjivar to a hostile work environment by discriminating against them in the terms, conditions and privileges of their employment because of their sexual orientation.

183.    As a result of Defendants subjecting them to a hostile work environment, Plaintiffs Rodriguez and Menjivar have suffered and continue to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

184.    Defendants have subjected Plaintiffs Rodriguez and Menjivar to a hostile work environment with malice and/or reckless indifference to their rights under the NYCHRL.

ELEVENTH CAUSE OF ACTION
VIOLATION OF NEW YORK'S WHISTLEBLOWER LAW
(On Behalf of Plaintiffs Villegas and Menjivar)

185.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

186.    New York Labor Law § 740 prohibits an employer from taking "any retaliatory action against an employee" when such employee "discloses, or threatens to disclose to a supervisor . . . an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation[.]"

187.    New York Labor Law § 740 also prohibits an employer from taking "any retaliatory action against an employee" when such employee "objects to, or refuses to participate in any such activity, policy of practice."

188.    Plaintiff Villegas refused to lie during the deposition scheduled in the Sexual Harassment Lawsuit because he believed that violated a law, rule or regulation.

189.    Plaintiff Menjivar complained to Defendant Uzhca about his assault of a customer because he reasonably believed that violated a law, rule or regulation.

190.    Defendants terminated Plaintiff Villegas for refusing to commit perjury, and they terminated Plaintiff Menjivar for complaining to Defendant Uzhca about his assault of a customer.

191.    No legitimate, non-retaliatory reasons exist for the adverse actions Defendants took against Plaintiffs Villegas and Menjivar.

192.    Defendants' actions against Plaintiffs Villegas and Menjivar were willful, malicious and wanton.

193.    Defendants are liable to Plaintiffs Villegas and Menjivar for their loss of wages, liquidated damages, punitive damages, and attorneys' fees and expenses.

TWELFTH CAUSE OF ACTION
DEFAMATION *PER SE*
(On Behalf of Plaintiff Villegas)

194.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

195.    As described above, Defendant Uzhca has stated false information regarding, *inter alia*, the circumstances surrounding the reason Defendants terminated Defendant Uzhca.

196.    These statements were untrue and defamatory in that they falsely reported that Plaintiff Villegas stole from Defendants.

197.    Defendant Uzhca knew or should have known that such defamatory statements were false.

198.    Defendant Uzhca made such defamatory statements with knowledge of their falsity and/or with reckless disregard for their truth or falsity.

199.    Defendant Uzhca's statements constitute defamation *per se* because they impugn Plaintiff Villegas' honesty, trustworthiness and professional fitness and abilities by falsely claiming he stole from his former employer.

200.    Defendant Uzhca's statements constitute defamation because they accuse Plaintiff Villegas of committing a crime, namely, theft.

201.    Defendant Uzhca's defamatory statements have harmed Plaintiff Villegas' professional reputations and standing in his industry, have caused him economic harm, have caused him to incur special damages in the form of actual pecuniary loss, including lost income, benefits, job security and opportunities for career advancement and have caused him embarrassment, humiliation and emotional injury.

202.    As a direct and proximate cause of Defendant Uzhca's defamation, Plaintiff Villegas has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and emotional distress.

203.    As a direct and proximate result of Defendant Uzhca's conduct, Plaintiff Villegas has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

204.    Defendant Uzhca's defamatory statements were malicious, willful, wanton, and done with reckless disregard for Plaintiff Villegas' rights. As such, Plaintiff Villegas is entitled to an award of punitive damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award for unpaid minimum wages under the Labor Law;

d.    An award for unpaid overtime premium pay under the FLSA and Labor Law;

e.    An award for unpaid spread-of-hours pay under the Labor Law;

f.    An award for failing to provide the N.Y. Lab. Law § 195(1) Notice;

g.    An award for failing to provide the N.Y. Lab. Law § 195(3) Wage Statements;

h.    An award of liquidated damages as a result of Defendants' Labor Law violations;

i.    An award of liquidated damages as a result of Defendants' willful FLSA violations;

j.    Equitably tolling the statute of limitations under the FLSA;

k.      Back pay, front pay, and all benefits along with pre and post judgment interest;

l.      An award of punitive damages under the NYSHRL, NYCHRL and Labor Law;

m.      Punitive, liquidated and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, physical injury and emotional distress, and medical expenses in order to compensate them for the injuries they have suffered and to signal to other employers that discrimination, harassment and retaliations are repulsive to legislative enactments;

n.      An award of damages for any and all monetary and/or non-monetary losses suffered by Plaintiff Vilegas from Defendant Uzhca's defamatory statements, including, but not limited to, loss of income, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

o.      An award of punitive damages and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

p.      An injunction that prohibits Defendant Uzhca from any further acts of defamation against Plaintiff Villegas;

q.      A declaratory judgment that Defendant Uzhca's statements about Plaintiff Villegas stealing from Defendants are false;

r.      An award of pre-judgment and post-judgment interest;

s.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

t.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions

of fact the Complaint raises.

Dated: New York, New York
       May 8, 2025

                        LIPSKY LOWE LLP


                        <u>s/ Douglas B. Lipsky</u>
                        Douglas B. Lipsky
                        Sara J. Isaacson
                        420 Lexington Avenue, Suite 1830
                        New York, New York 10170
                        212.392.4772
                        doug@lipskylowe.com
                        sara@lipskylowe.com
                        *Counsel for Plaintiffs*